■ In the Matter of SUNDAY AYANFODUN, Respondent, v BARBARA J. SOBOL, as Commissioner of the New York City Department of Social Services, et al., Appellants. [615 NYS2d 403] —Order and judgment (one paper) of the Supreme Court, New York County (Kristin Booth Glen, J.), entered June 10, 1993, granting the CPLR article 78 petition, to the extent of annulling the New York State Department of Social Services' determination, made after a fair hearing, affirming the denial by the New York City Department of Social Services of petitioner's application for Emergency Assistance to Needy Families

with Children (EAF) benefits to petitioner, and directing the grant of EAF benefits to petitioner in the full amount of rental arrears through March 1992, is unanimously reversed, on the law and facts, the application by petitioner denied and the petition dismissed, without costs or disbursements.

Social Services Law § 350-j, which is headed "Emergency assistance to needy families with children" provides for such relief on the condition, *inter alia,* that

"(d) such emergency needs resulted from a catastrophic occurrence or from a situation which threatens family stability and which has caused the destitution of the child and/or household; and

"(e) such occurrence or situation could not have been foreseen by the applicant, [and] was not under his control" (Social Services Law § 350-j [2] [d], [e]).

These criteria have been interpreted, considering the language used by the Legislature and in light of the expressed intent of the draftpersons, to provide protection for such families only in " 'sudden and unexplained emergency events' " and not "to remedy the anticipated demands created as the result of everyday life" *(Baumes v Lavine,* 38 NY2d 296, 304, *affg and quoting* 44 AD2d 336).

The record before us clearly shows that the threat of imminent eviction was *not* caused by a "catastrophic occurrence" or by a "sudden and unexplained emergency event", not under petitioner's "control", but rather by an extended history by petitioner of improvident financial management. Thus, petitioner sought funds for the rent arrears which had been accumulating since 1989. By petitioner's own admission, he did not pay his rent over the next two or three years because he had to pay, among others, "loan sharks" for money borrowed in an unsuccessful business venture. He also sent, because of the obligation of "cultural ties", about $3,000 to relatives in Nigeria for medical care and other expenses. Since petitioner chose to spend his money on "anticipated demands created as the result of everyday life" rather than his rent, he cannot now complain that the landlord's efforts to recover arrears and to evict him and his family are caused by a sudden emergency, not under his control.

Moreover, petitioner failed to make the necessary showing that there was an "emergency need" or that the situation has caused the "destitution" of the household (Social Services Law § 350-j [2] [d]). It is not disputed that, at the time of the fair hearing, both the petitioner and his spouse were working,

earning a combined income of approximately $45,000 per year. Petitioner has apparently also paid use and occupancy since April 1992. Even assuming petitioner and his family are evicted, it was not unreasonable for respondent New York State Department of Social Services to conclude that petitioner could relocate on the present household income. As noted by the State, if petitioner pays one-fourth of his gross income for housing (a traditional budgeting figure), he could set aside $938 per month for rent. This is significantly above the $700 per month that he currently pays and supports the determination of the State Department of Social Services denying petitioner the emergency relief requested. Concur—Rosenberger, J. P., Kupferman, Ross, Nardelli and Tom, JJ.